UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| MICHAEL MOORE, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 4:11CV1205 HEA |
| CITY OF BRENTWOOD, | ) | |
| Defendant. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, [Doc. No. 4], seeking an Order restraining Defendant from enforcing Chapter 13, art IX, § 13-202 of the Municipal Code of the City of Brentwood. A hearing on the motion was held on July 12, 2011 wherein arguments were heard. No evidence was presented at the hearing. For the reasons set forth below, the Motion is denied.

## Facts and Background

Plaintiff filed this action under the provisions of 42 U.S.C. § 1983, for an alleged violation of his First Amendment rights of free speech. The facts giving rise to this action are not in dispute.

On May 31, 2011, Plaintiff sent an email to counsel for the City of Ladue advising that on June 2, 2011, a group known as "Citizens Against Racial

Profiling" (CARP) was going to hold a peaceful demonstration on the McKnight Bridge over Interstate 64/40 for the alleged prejudicial treatment by the City of Ladue against African American motorists. The demonstration was postponed until June 3, 2011.

On June 3, 2011, around 3:15 p.m., Plaintiff and two other members of CARP assembled on the Bridge and hung, using plastic zip ties, a 4 foot by 8 foot sign on the guardrail fencing of the Bridge facing east so that the westbound traffic could read the sign. The sign read: "Black Drivers Caution Racial Profiling Ahead." After Defendant had received a telephone call from the City of Ladue, at about 3:37 p.m., Brentwood Police Officer Dan Retzlaff arrived on the scene and informed Plaintiff that it was against City Ordinance to hang the sign on an overpass. Plaintiff informed the Officer that the Bridge was not owned by the City of Brentwood, but by the State and was constructed using United States federal funding as part of the I-64/40 project, and requested that the City cite the ordinance or state law that supported Retzlaff's contentions. Retzlaff indicated that he did not know.

Retzlaff requested that Plaintiff remove the sign. Plaintiff indicated that he would not do so, and thereafter, Retzlaff cut the sign down from the guardrail fencing and allegedly did damage thereto in the process. Retzlaff informed

Plaintiff that the sign would be confiscated.

Around 3:41 p.m., Brentwood Officer Chris Gibson and Ladue Police Chief Wooten arrived at the scene. Gibson requested Plaintiff and the other two individuals present to produce state identification. Gibson was unable to cite to the law that was allegedly being violated. After being detained and questioned for nearly 45 minutes, Retzlaff returned the sign. Plaintiff and the other individuals were allowed to leave.

On June 6, 2011, Plaintiff emailed a letter to Defendant regarding the incident. In this email, Plaintiff stated that he believed his First Amendment rights had been violated, and asked for a citation to the law supporting Defendant's actions. Defendant failed to respond. On June 7, 2011, Plaintiff submitted a request for records pursuant to the "Sunshine Act" wherein he requested a copy of Defendant's incident report.

On June 22, 2011, Plaintiff sent another emailed letter to Defendant, again requesting the ordinance or state law deemed to have been violated on the Bridge on June 3, 2011. On June 22, 2011, Defendant replied by email stating that the ordinance which was allegedly violated was Brentwood Municipal Ordinance Code § 13-202 and RSMo § 229.150.

## **Discussion**

In *Dataphase Systems, Inc. v. C.L. Systems, Inc*., 640 F.2d 109 (8th Cir. 1981), the Court of Appeals for the Eighth Circuit set out the factors for determining if a temporary restraining order or preliminary injunction should be issued. *Id*. at 113. These factors are "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Id*. The burden of proving that the relief should be awarded rests entirely on the movant. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003), citing *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995).

The irreparable harm factor focuses on the harm or potential harm to the plaintiff of defendant's conduct or threatened conduct. *Dataphase*, 640 F.2d at 114. A plaintiff seeking preliminary injunction must establish that it "is likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Natural Res. Def. Council, Inc.*, --- U.S. ----, 129 S.Ct. 365, 374 (2008). Significantly, the Eighth Circuit has consistently held that irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages. *General Motors Corp v. Harry Brown's, LLC,* 563 F.3d 312, 319 (8th Cir. 2009). An irreparable injury is an

injury "of such a nature that money damages alone do not provide adequate relief." *Hinz v. Neuroscience, Inc.*, 538 F.3d 979, 986 (8th Cir. 2008). If damages will adequately compensate plaintiffs for their injury, injunctive relief is not appropriate. See *Kelly v. Golden*, 352 F.3d 344, 353 (8th Cir.2003).

Moreover, it is also well established that the absence of a finding of irreparable injury is alone sufficient ground for denying a preliminary injunction. "Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." *Watkins*, 346 F.3d at 844; see also *General Motors Corp.*, 563 F.3d at 320; *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506- 07 (1959) ("The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies."); *Adam-Mellang v. Apartment Search, Inc.,* 96 F.3d 297, 299 (8th Cir.1996); *Bandag, Inc. v. Jack's Tire & Oil, Inc.,* 190 F.3d 924, 926 (8th Cir.1999)(same). When there is an adequate remedy at law, a preliminary injunction is not appropriate. *Modern Computer Sys., Inc. v. Modern Banking Sys., Inc.,* 871 F.2d 734, 738 (8th Cir.1989).

**Likelihood of Success on the Merits**

In defining the parameters of a speaker's First Amendment right of access to public property, the Supreme Court looks first to the nature of the forum the public

entity is providing. "The existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44 (1983). The greatest protection is provided for traditional public fora areas such as streets and parks that, since "time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Id*. at 45 (quotations omitted). Content-based exclusions from such a forum must be narrowly drawn and necessary to serve a compelling state interest. Content-neutral regulations must be "narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Id*. The same protection is provided to speakers in a "designated public forum," defined as "public property which the State has opened for use by the public as a place for expressive activity." *Id*.

In this case, the public forum is the fencing along the Highway 64/40 overpass. Nothing has been presented to the Court that this overpass fencing has traditionally been used for public expression.

The overpass fences are also not designated public fora because they have not been opened by the government for public discourse. Significantly, "[t]he

government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse." *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 802 (1985); *Victory Through Jesus Sports Ministry Foundation v. Lee's Summit R-7 School Dist.,* 640 F.3d 329, 334 (8th Cir. 2011). In determining whether the government intended to create a designated public forum, the Supreme Court has considered the nature of the property and its compatibility with expressive activity, as well as the policy and practices of the government. *Cornelius*, 473 U.S. at 802. The nature of the property is an overpass over a highway, under which traffic flows. Fences on highway overpasses may be compatible with expressive activity and could be used for the posting of signs for motorists. At the same time, however, fences on overpasses are also incompatible with expressive activity, for each message displayed serves inevitably to distract drivers' attention from the road to some degree.

Turning to the practices and policies of the government, Section 13-202 provides:

> No person shall paint, post, place, hang, suspend or affix any advertisement card, poster, sign, banner or streamer, of any nature, or for any purpose, or shall cause the same to be done on or to any curbstone, flagstone or any other portion of any street or sidewalk, or upon any tree or lamppost standing or erected on any public street,

alley or other public place, or upon any pole erected upon any public street, alley or other public place, which pole is used to carry telephone wires or cables, electric light wires or other electric conductors, or to any hydrant, bridge or other public structure within this city; provided, that nothing in this section shall apply to any official notice required by law or ordinance to be posted by public officers.

Section 229.150 provides:

1. All driveways or crossings over ditches connecting highways with the private property shall be made under the supervision of the overseer or commissioners of the road districts.

2. Any person or persons who shall willfully or knowingly obstruct or damage any public road by obstructing the side or cross drainage or ditches thereof, or by turning water upon such road or right-of-way, or by throwing or depositing brush, trees, stumps, logs, or any refuse or debris whatsoever, in said road, or on the sides or in the ditches thereof, or by fencing across or upon the right-of-way of the same, or by planting any hedge or erecting any advertising sign within the lines established for such road, or by changing the location thereof, or shall obstruct said road, highway or drains in any other manner whatsoever, shall be deemed guilty of a misdemeanor, and, upon conviction, shall be fined not less than five dollars nor more than two hundred dollars, or by imprisonment in the county jail for not exceeding six months, or by both such fine and imprisonment.

3. The road overseer of any district, or county highway engineer, who finds any road obstructed as above specified, shall notify the person violating the provisions of this section, verbally or in writing, to remove such obstruction. Within ten days after being notified, he shall pay the sum of five dollars for each and every day after the tenth day if such obstruction is maintained or permitted to remain; such fine to be recovered by suit brought by the road overseer, in the name of the road district, in any court of competent jurisdiction.

Accordingly, the official policy of Defendant is not to allow any banners, signs, or advertising devices to be affixed to highway overpasses.[1]

When public property is not by tradition or designation a public forum, the controlling public entity may limit expressive activity as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view. *Perry*, 460 U.S. at 46, 103 S.Ct. 948; *Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings College of the Law v. Martinez*, ––– U.S. ––––, 130 S.Ct. 2971, 2984(2010).

**Reasonableness**

> Control over access to a nonpublic forum may be based on the subject matter of the speech, on the identity or status of the speaker, or on the practical need to restrict access for reasons of manageability or the lack of resources to meet total demand. See Cornelius, 473 U.S. at 806–09, 105 S.Ct. 3439. The restriction on access must be "reasonable in light of the purpose which the forum at issue serves." *Perry*, 460 U.S. at 49, 103 S.Ct. 948. But a restriction "need not be the most reasonable or the only reasonable limitation." Cornelius, 473 U.S. at 808, 105 S.Ct. 3439. The reasonableness of a restriction on access is supported when "substantial alternative channels" remain open for the restricted communication. Perry, 460 U.S. at 53, 103 S.Ct. 948.

*Victory* 640 F.3d at 334.

---

[1] Although Plaintiff argues that the prohibition only applies to "advertising" messages and none other, the proper reading of the Ordinance establishes that the word "advertising" modifies the word "cards, " and is merely one type of item prohibited, in addition to the other enumerated items.

Allowing members of the public to simply fasten and affix banners or signs over the public roadway without any standards of sign attachment, or controls as to size, location, illumination, and material requirements poses a variety of significant safety risks. Foremost among these risks is that such signs or banners could easily become dislodged by the elements of wind and rain or by acts of vandalism, causing such banners or signs to plummet to the highway below. This could seriously jeopardize life and property, especially along the State highway system where posted speed limits in limited access State highways and freeways range from 50 to 70 mph. Moreover, any person placing such signs and using tools to do so could endanger vehicles in the roadway below as the result of tools falling onto the highway or upon vehicles traversing the location. In addition, it is important to prevent saturation of messages at any one location, and that allowing numerous banners of all sorts on overpasses in the direct view of drivers in and of itself poses a potentially significant distraction to motorists on the highway below.

"The First Amendment does not demand unrestricted access to a nonpublic forum merely because use of that forum may be the most efficient means of delivering the speaker's message." *Cornelius*, 473 U.S. at 809. Plaintiff does not dispute that he was not prohibited from standing on the overpass on the west side where there is a sidewalk. This manner of expression clearly diminishes the possible threats to motorists below from an accidental falling of the sign. Likewise, there is nothing to indicate that Plaintiff was prohibited from

demonstrating in any other public forum of the City of Brentwood.

**Viewpoint Neutrality**

Plaintiff has presented nothing to establish that the restrictions herein, *i.e.*, Defendant's prohibition from affixing signs to the overpass had anything to do with the message contained on his sign. Rather, the prohibition is completely content neutral, as it prohibits *all* such signs regardless of the message. Defendant's Ordinance and the State Statute place the restrictions in a viewpoint neutral manner. Therefore, Plaintiff has failed to establish a likelihood of success on the merits of his claims.

**Irreparable Harm**

Plaintiff argues that he has suffered and continues to suffer irreparable harm as a result of Defendant's "illegal" actions. He claims that he "wants to continue to engage in constitutionally protected speech right now upon the Bridge and would do so, except that § 13-202 prevents Moore and punishes him by fine or imprisonment or both fine and imprisonment. In addition, Moore will suffer further irreparable harm if the City uses its police powers to enforce Missouri state statute § 229.150, which is not within the limits of the City's authority to enforce."

Plaintiff's argument fails by reason of the fact the Ordinance does not prohibit him from engaging in constitutionally protected speech "right now upon the Bridge." Plaintiff was not prohibited from displaying his sign on the overpass, rather, he was prohibited from affixing his sign to the fencing based on the

Ordinance. Moreover, Plaintiff fails to cite any authority for his argument that Brentwood police officers are not authorized to enforce the laws of the State of Missouri.

**Balance of the Harm**

It appears to the Court that this factor favors defendant. While Plaintiff has numerous alternative means to engage in constitutionally protected speech besides attaching a sign to the fencing of the guardrail overpass, were the Court to allow Plaintiff to attach his sign, Defendant would have to constantly patrol the overpass to ensure the safety of the motorists based on the foreseeability of falling signs[2] and disruption of the flow of traffic and injury to persons .

**Public Interest**

This factor is inextricably intertwined with the discussion of the likelihood of success on the merits. In balancing the reasonableness of the restrictions with Plaintiff's constitutional right to free speech, the public interest is best served in this instance by the restrictions which have arisen from the need to ensure the safety of the motorists traveling on the highway. Clearly, the public interest is best served by keeping the highway free of falling signs, if possible. While it is indisputable that freedom of speech is a most fundamental right, it is elementary and likewise indisputable the right is not so absolute as to jeopardize the safety of

---

[2] The use of the plural "signs" is necessary, even though only one sign is at issue by reason of the fact that if Plaintiff is allowed to attach a sign to the guardrail, Defendant would be precluded from prohibiting others from attaching signs containing constitutionally protected speech.

others.

## Conclusion

Plaintiff has failed to satisfy his burden of establishing the requisite criteria necessary for the Court to grant the extraordinary remedies of a temporary restraining order and preliminary injunction.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion for Temporary Restraining Order and Preliminary Injunction, [Doc. 4], is Denied.

Dated this 18th day of July, 2011.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE