UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL MOORE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:11CV1205 HEA |
| | ) |
| CITY OF BRENTWOOD, | ) |
| | ) |
| Defendant. | ) |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's Motion to Set Aside Order and Reconsider Motion for Temporary Restraining Order and Preliminary Injunction, [Doc. No. 7]. For the reasons set forth below, the Motion is denied.

**Facts and Background**

Plaintiff filed this action under the provisions of 42 U.S.C. § 1983, for an alleged violation of his First Amendment rights of free speech. As the Court held in its July 18, 2011 Opinion Memorandum and Order, the facts giving rise to this action are not in dispute:

> On May 31, 2011, Plaintiff sent an email to counsel for the City of Ladue advising that on June 2, 2011, a group known as "Citizens Against Racial Profiling" (CARP) was going to hold a peaceful demonstration on the McKnight Bridge over Interstate 64/40 for the alleged prejudicial treatment by the City of Ladue against African American motorists. The demonstration was postponed until June 3, 2011.

On June 3, 2011, around 3:15 p.m., Plaintiff and two other members of CARP assembled on the Bridge and hung, using plastic zip ties, a 4 foot by 8 foot sign on the guardrail fencing of the Bridge facing east so that the westbound traffic could read the sign.  The sign read: "Black Drivers Caution Racial Profiling Ahead."  After Defendant had received a telephone call from the City of Ladue, at about 3:37 p.m., Brentwood Police Officer Dan Retzlaff arrived on the scene and informed Plaintiff that it was against City Ordinance to hang the sign on an overpass.  Plaintiff informed the Officer that the Bridge was not owned by the City of Brentwood, but by the State and was constructed using United States federal funding as part of the I-64/40 project, and requested that the City cite the ordinance or state law that supported Retzlaff's contentions.  Retzlaff indicated that he did not know.

Retzlaff requested that Plaintiff remove the sign.  Plaintiff indicated that he would not do so, and thereafter, Retzlaff cut the sign down from the guardrail fencing and allegedly did damage thereto in the process.  Retzlaff informed Plaintiff that the sign would be confiscated.

Around 3:41 p.m., Brentwood Officer Chris Gibson and Ladue Police Chief Wooten arrived at the scene.  Gibson requested Plaintiff and the other two individuals present to produce state identification.  Gibson was unable to cite to the law that was allegedly being violated.  After being detained and questioned for nearly 45 minutes, Retzlaff returned the sign.  Plaintiff and the other individuals were allowed to leave.

On June 6, 2011, Plaintiff emailed a letter to Defendant regarding the incident.  In this email, Plaintiff stated that he believed his First Amendment rights had been violated, and asked for a citation to the law supporting Defendant's actions.  Defendant failed to respond.  On June 7, 2011, Plaintiff submitted a request for records pursuant to the "Sunshine Act" wherein he requested a copy of Defendant's incident report.

On June 22, 2011, Plaintiff sent another emailed letter to Defendant, again requesting the ordinance or state law deemed to have been violated on the Bridge on June 3, 2011.  On June 22, 2011, Defendant replied by email stating that the ordinance which was

allegedly violated was Brentwood Municipal Ordinance Code § 13-202 and RSMo § 229.150.

## Discussion

Plaintiff seeks an Order from this Court setting aside the Court's denial of a temporary restraining order, and an Order reconsidering Plaintiff's request for a restraining order and injunctive relief. Plaintiff's Motion, however, is based on the premise that the Court denied the injunctive relief because the Court held that the public overpass was not a "public forum." Quite the contrary. The Court indeed recognizes the public nature of overpasses. The crux of this Court's decision is *not* the fact that Plaintiff was expressing his views on the public overpass, rather, the issue before the Court was the attachment of Plaintiff's sign on the *fencing* along the Highway 64/40 overpass.

> In this case, the public forum is the fencing along the Highway 64/40 overpass. Nothing has been presented to the Court that this overpass fencing has traditionally been used for public expression.
>
> The overpass fences are also not designated public fora because they have not been opened by the government for public discourse. Significantly, "[t]he government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse." *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 802 (1985); *Victory Through Jesus Sports Ministry Foundation v. Lee's Summit R-7 School Dist.,* 640 F.3d 329, 334 (8th Cir. 2011). In determining whether the government intended to create a designated public forum, the Supreme Court has considered the nature of the property and its

compatibility with expressive activity, as well as the policy and practices of the government.  *Cornelius*, 473 U.S. at 802.  The nature of the property is an overpass over a highway, under which traffic flows.  Fences on highway overpasses may be compatible with expressive activity and could be used for the posting of signs for motorists.  At the same time, however, fences on overpasses are also incompatible with expressive activity, for each message displayed serves inevitably to distract drivers' attention from the road to some degree.

Plaintiff argues that the Court's denial of the temporary restraining order was in error because the Court assessed this matter under a "viewpoint neutral" rather than a "content neutral" standard.  As the Court's order clearly details, the fact that the fencing is not a public forum extricates the matter from one standard and places the determination of the City's actions into the realm of reasonableness of the action taken.

> When public property is not by tradition or designation a public forum, the controlling public entity may limit expressive activity as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view.  *Perry*, 460 U.S. at 46, 103 S.Ct. 948; *Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings College of the Law v. Martinez*, ─── U.S. ────, 130 S.Ct. 2971, 2984(2010).

**Reasonableness**

> Control over access to a nonpublic forum may be based on the subject matter of the speech, on the identity or status of the speaker, or on the practical need to restrict access for reasons of manageability or the lack of resources to meet total demand. See Cornelius, 473 U.S.

> at 806–09, 105 S.Ct. 3439. The restriction on access must be "reasonable in light of the purpose which the forum at issue serves." *Perry*, 460 U.S. at 49, 103 S.Ct. 948. But a restriction "need not be the most reasonable or the only reasonable limitation." Cornelius, 473 U.S. at 808, 105 S.Ct. 3439. The reasonableness of a restriction on access is supported when "substantial alternative channels" remain open for the restricted communication. Perry, 460 U.S. at 53, 103 S.Ct. 948.

*Victory* 640 F.3d at 334.

Allowing members of the public to simply fasten and affix banners or signs over the public roadway without any standards of sign attachment, or controls as to size, location, illumination, and material requirements poses a variety of significant safety risks. Foremost among these risks is that such signs or banners could easily become dislodged by the elements of wind and rain or by acts of vandalism, causing such banners or signs to plummet to the highway below. This could seriously jeopardize life and property, especially along the State highway system where posted speed limits in limited access State highways and freeways range from 50 to 70 mph. Moreover, any person placing such signs and using tools to do so could endanger vehicles in the roadway below as the result of tools falling onto the highway or upon vehicles traversing the location. In addition, it is important to prevent saturation of messages at any one location, and that allowing numerous banners of all sorts on overpasses in the direct view of drivers in and of itself poses a potentially significant distraction to motorists on the highway below.

"The First Amendment does not demand unrestricted access to a nonpublic forum merely because use of that forum may be the most efficient means of delivering the speaker's message." *Cornelius*, 473 U.S. at 809. Plaintiff does not dispute that he was not prohibited from standing on the overpass on the west side where there is a sidewalk. This manner of expression clearly diminishes the possible threats to motorists below from an accidental falling of the sign.

Likewise, there is nothing to indicate that Plaintiff was prohibited from demonstrating in any other public forum of the City of Brentwood.

## Conclusion

This Court has reviewed the July 18, 2011 Opinion and concludes that setting aside the Opinion and reconsideration of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction are not warranted.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Set Aside Order and Reconsider Motion for Temporary Restraining Order and Preliminary Injunction, [Doc. No. 7], is **DENIED**.

Dated this 30th day of March, 2012.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE